1 **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8

9  CHRISTOPHER JONES,                    )    No. CV-08-02099-PHX-GMS
                                          )
10              Plaintiff,                )    **ORDER**
                                          )
11  vs.                                   )
                                          )
12                                        )
    GENERAL MOTORS CORP., a Delaware)
13  Corporation; GREATER GLENDALE)
    AUTOMOTIVE LLC, dba J.D.)
14  BYRIDER, and Arizona Limited Liability)
    Company; GREATER GLENDALE)
15  FINANCE LLC, dba Car Now Acceptance)
    Company; DOES 1-100, inclusive,      )
16                                        )
                Defendants.               )
17  _____)

18          Pending before the Court is the Motion to Dismiss and to Enforce Arbitration

19  Agreement and Compel Arbitration of Defendant Greater Glendale Automotive LLC, dba

20  J.D. Byrider ("Byrider"). (Dkt. # 33.)  Defendant Greater Glendale Finance LLC ("the

21  Creditor") has joined the motion. (Dkt. # 43.)  Defendant General Motors Corporation

22  ("General Motors") has not. For the following reasons, the Court grants Byrider's motion.[1]

23

24          [1]Before briefing was complete, Defendant Byrider moved the Court to set oral

25  argument in this case. (Dkt. # 13.)  The Court denied the motion as premature, noting that
    the Court would set oral argument if it believed that oral argument would be helpful. (Dkt.
26  # 14.)  Having considered the issue further, the Court has decided not to set oral argument
    because the parties have thoroughly discussed the law and the evidence, and oral argument
27  will not aid the Court's decision. *See Lake at Las Vegas Investors Group, Inc. v. Pac.
    Malibu Dev.*, 933 F.2d 724, 729 (9th Cir. 1991).
28

## BACKGROUND

On March 7, 2008, Plaintiff purchased a truck from Byrider, an automobile dealer. Upon purchasing the truck, Plaintiff executed several documents, one of which included an agreement that the parties would submit all disputes between them to binding arbitration. (Dkt. # 11 Ex. A at 8-9.) After purchasing the truck, Plaintiff alleges that certain defects for which Defendants are responsible caused the engine to fail, catch fire, and destroy the truck.

Plaintiff brought suit in this Court on November 13, 2008. (Dkt. # 1.) Plaintiff's Third Amended Complaint advances five claims: count one, violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1605 *et seq.*; count two, breach of express warranties; count three, breach of the implied warranty of merchantability; count four, breach of the implied warranty of fitness for a particular purpose; and count five, negligent repair. (Dkt. # 36.) Counts two, three, and four are predicated on both Arizona law and the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 *et seq.*, and count five is a pendent claim based on Arizona common law. Defendant Byrider now brings a motion to dismiss this case and order arbitration proceedings pursuant to Federal Rule of Civil Procedure 12(b)(1), or in the alternative to stay these proceedings pending the outcome of arbitration. (Dkt. # 33.)

## DISCUSSION

### I.    Legal Standard

The defense of lack of subject matter jurisdiction may be raised by the parties, Fed. R. Civ. P. 12(b)(1), or by the Court, Fed. R. Civ. P. 12(h)(3). In resolving a motion to dismiss for lack of subject matter jurisdiction, the Court is not limited to considering the allegations in the pleadings if the "jurisdictional issue is separable from the merits of [the] case." *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). The Court is "free to hear evidence regarding jurisdiction and to rule on that issue prior to trial, resolving factual disputes where necessary." *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983).

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, "mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

"The court's role under the Act is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (citing 9 U.S.C. § 4). If a district court decides that an arbitration agreement is valid and enforceable, then it should either stay or dismiss the claims subject to arbitration. *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1276-77 (9th Cir. 2006).

**II.     Analysis**

In this case, Byrider argues that Plaintiff's claims against it are subject to binding arbitration. (Dkt. # 33.) There is no dispute that Plaintiff and Byrider entered into a binding arbitration agreement and that the claims now advanced fall within the scope of that agreement.[2]  (*See* Dkt. # 11 Ex. A.)  Plaintiff argues, however, that the Court should not enforce the agreement for five reasons: (A) the arbitration agreement is unconscionable; (B) Plaintiff's MMWA claims are not arbitrable; (C) Plaintiff's TILA claims are not arbitrable; (D) the arbitration clause does not cover Plaintiff's claims against General Motors; and (E) Plaintiff has not refused to arbitrate. Plaintiff also argues (F) that he is entitled to a jury trial on the issue of arbitrability. The Court will address each of these six arguments in turn.

---

[2]The Creditor, in joining Byrider's motion, states that the claims brought against it in this action should be dismissed or referred to arbitration "[f]or the same reasons set forth in the Motion to Dismiss." (Dkt. # 43 at 1.) The motion to dismiss, however, argues that claims against Byrider should be dismissed or referred to arbitration because there is a binding arbitration agreement between Plaintiff and Byrider. (*See* Dkt. # 33.) The motion does not argue that the arbitration agreement extends to cover claims against the Creditor (*see id.*), and the only signatories to the agreement are Plaintiff and Byrider (*see* Dkt. # 11 Ex. A). Thus, the Court will not dismiss or refer to arbitration any claims brought against the Creditor.

## A.    Unconscionability

Plaintiff first argues that the arbitration agreement is unconscionable.  (Dkt. # 38 at 2-13.)  The FAA "provides that arbitration agreements 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'"  *Chalk v. T-Mobile USA, Inc.*, 560 F.3d 1087, 1092 (9th Cir. 2009) (quoting 9 U.S.C. § 2).  Although "the FAA clearly enunciates a congressional intention to favor arbitration, general contract defenses such as unconscionability, grounded in state contract law, may operate to invalidate arbitration agreements."  *Kam-Ko Bio-Pharm Trading Co. Ltd.-Australasia v. Mayne Pharma (USA) Inc.*, 560 F.3d 935, 940 (9th Cir. 2009) (internal citations, ellipsis, and quotations omitted).

"[U]nconscionability is governed by state law," *Chalk*, 560 F.3d at 1092, and in this case the parties agree that Arizona law controls (Dkt. # 33 at 9-12; Dkt. # 38 at 2-3).  Thus, the Court's task is to determine whether the Arizona courts would consider this arbitration agreement unconscionable.  *See In re First Alliance Mortgage Co.*, 471 F.3d 977, 993 (9th Cir. 2006) ("[W]hen interpreting state law a federal court must predict how the highest state court would decide the issue and . . . where there is no convincing evidence that the state supreme court would decide differently, a federal court is obligated to follow the decisions of the state's intermediate appellate courts[.]") (internal quotations and ellipsis omitted).

Arizona recognizes that both procedural and substantive unconscionability can play a role in determining whether an agreement is enforceable.  *Maxwell v. Fid. Fin. Servs., Inc.*, 184 Ariz. 82, 90, 907 P.2d 51, 59 (1995).  The Arizona Supreme Court has held that substantive unconscionability alone can be enough to render an agreement unenforceable, but it has declined to take a position on whether procedural unconscionability alone can be inherently sufficient.  *See id.*  This Court need not resolve that question, however, because none of Plaintiff's arguments about either type of unconscionability, alone or in concert, are sufficient to render the arbitration agreement unenforceable.

### 1. Procedural Unconscionability

"Procedural or process unconscionability is concerned with unfair surprise, fine print clauses, mistakes or ignorance of important facts or other things that mean bargaining did not proceed as it should." *Id.* at 88-89, 907 P.2d at 57-58. Plaintiff argues that the arbitration agreement here is procedurally unconscionable because: (a) it appears in a contract of adhesion; (b) it does not recite the rules of the arbitration organizations; and (c) it was "hidden in a lengthy form contract." (Dkt. # 38 at 3-6.) The Court disagrees that the arbitration agreement is unenforceable under any of these arguments.

### a. Adhesion

Plaintiff argues that the arbitration agreement is unenforceable because it appears in a contract of adhesion (i.e., a form contract containing terms over which Plaintiff could not negotiate). (*Id.* at 4.) This is an issue the Court cannot consider. *Nagrampa*, 469 F.3d at 1267 ("On a motion to compel arbitration, a court cannot consider whether the contract as a whole is unconscionable. Instead, a court is limited to considering whether the arbitration clause in the agreement is unconscionable.") (citation omitted). This argument must therefore be presented to the arbitrator. *Id.* at 1277 (holding that if "the district court concludes that the challenge is not to the arbitration provision itself but, rather, to the validity of the entire contract, then the issue of the contract's validity should be considered by an arbitrator in the first instance").

Alternatively, the Court notes that the "conclusion that the contract was one of adhesion is not, of itself, determinative of its enforceability." *Broemmer v. Abortion Servs. of Phoenix, Ltd.*, 173 Ariz. 148, 151, 840 P.2d 1013, 1016 (1992). Rather, a court that determines that an agreement constitutes a contract of adhesion would then conduct independent reasonable expectations and unconscionability analyses. *See id.* As Plaintiff advances no reasonable expectations arguments, the unconscionability analysis below would therefore be the dispositive inquiry.

## b.    Rules of the Arbitration Organizations

Plaintiff next argues that the arbitration agreement is unenforceable because it "did not disclose the relevant rules of procedure that would apply to the arbitration process." (Dkt. # 38 at 5-6.)  Plaintiff cites California law for this proposition, *Lucas v. Gund, Inc.*, 450 F. Supp. 2d 1125, 1131 (C.D. Cal. 2006), but California law does not govern this case.

Even under the California standard, however, Plaintiff's argument would still fail. The *Lucas* court explained that, in the California cases utilizing this rule, "the problem wasn't just that the rules were not attached, but that it was done to hide the fact that the weaker party was giving up significant rights," for instance through the limitation of remedies or by conflicting with other provisions in the arbitration agreement. *Id.*  Where, as in *Lucas*, there was no indication that the failure to attach rules was meant to hide the surrender of significant rights, that failure did not affect the enforceability of the arbitration agreement. *Id.*  In the same way, Plaintiff has not shown that the failure to attach rules was to hide the surrender of significant rights.  Thus, even under *Lucas*, the enforceability of the arbitration agreement is not implicated.

Regardless, the arbitration clause clearly explains how the relevant rules can be obtained, stating that the rules of the American Arbitration Association ("AAA") and the National Arbitration Forum ("NAF") "may be obtained by mail" from physical addresses, which are then provided, "or on the internet" at the organizations' websites, which are also provided.  (*See* Dkt. # 11 Ex. A at 9.)  Thus, while Plaintiff may not have had the rules, Plaintiff had easy access to them.  Plaintiff's argument that "Defendants did not provide [him] with an internet accessible computer in order to view this information" is disingenuous. The arbitration agreement specifically provides that Plaintiff could "contact the American Arbitration Association . . . or the National Arbitration Forum . . . *before signing this contract*."  (*Id.* (emphasis added).)  Plaintiff thus had both the ability and the opportunity to access the rules before signing the contract.

### c. "Hidden in a Lengthy Form Contract"

Plaintiff's last argument about procedural unconscionability is that the arbitration provision was designed to be a trap for the unwary. (*See* Dkt. # 38 at 6.) Plaintiff provides no legal authority in this section; rather, he simply makes a series of arguments about the nature of the contract to suggest that no reasonable person would have located the arbitration provision within it.

Plaintiff's description, however, does not withstand scrutiny. Plaintiff describes the Retail Installment Contract and Security Agreement as "lengthy." It is, in fact, six pages long. (*See* Dkt. # 11 Ex. A at 5-10.) Plaintiff describes the document as "single-spaced" and "fine-print." Although the document is single-spaced in some places, the print is entirely readable, and the presentation of the text does not affect the legibility or comprehensibility of the document. (*See id.*) Moreover, the heading "Arbitration Agreement" is set off from the text, centered, bolded, and presented in all capital letters. (*See id.* at 8.) It was certainly not, as Plaintiff puts it, "hidden" in the contract. Finally, Plaintiff's argument that "Defendants required no initials or signature anywhere adjacent to the arbitration clause" is untrue. The arbitration clause spanned two pages, both of which Plaintiff initialed. (*See id.* at 8, 9.) In fact, Plaintiff's initials appear within, quite literally, one inch of the following clause:

> **THE TERMS OF THIS ARBITRATION AGREEMENT AFFECT YOUR LEGAL RIGHTS. IF YOU DO NOT UNDERSTAND ANY TERMS OF THIS PROVISION OR THE COST, ADVANTAGES OR DISADVANTAGES OF ARBITRATION, SEEK INDEPENDENT ADVICE AND/OR CONTACT THE AMERICAN ARBITRATION ASSOCIATION AT** [phone number] **OR THE NATIONAL ARBITRATION FORUM AT** [phone number] **BEFORE SIGNING THIS CONTRACT.**

(*Id.* at 9.) This clause appears in all capital letters and in bold font. (*Id.*) Thus, Plaintiff has not established the "unfair surprise, fine print clauses, mistakes or ignorance of important facts or other things" necessary to yield procedural unconscionability. *See Maxwell*, 184 Ariz. at 88-89, 907 P.2d at 57-58.

## 2. Substantive Unconscionability

"Substantive unconscionability concerns the actual terms of the contract and examines the relative fairness of the obligations assumed." *Id.* at 89, 907 P.2d at 58. "Indicative of substantive unconscionability are contract terms so one-sided as to oppress or unfairly surprise an innocent party, an overall imbalance in the obligations and rights imposed by the bargain, and significant cost-price disparity." *Id.* Plaintiff argues that the arbitration agreement is substantively unconscionable because: (a) Plaintiff may have to pay more in arbitration than in court; (b) the arbitration clause contains no provision for waiver of arbitration fees for parties that are unable to pay; (c) Plaintiff may have to pay arbitration costs if he loses; (d) the arbitration agreement permits Byrider to pursue self-help remedies; and (e) the arbitration agreement purports to allow the arbitrator to resolve disputes over the scope of the arbitration clause. (Dkt. # 38 at 7-12.) The Court concludes that the arbitration agreement is not substantively unconscionable under any of these theories.

### a. Arbitration Costs

Plaintiff argues that the arbitration agreement is unconscionable because he might be forced to pay expenses that he might not have to pay in a judicial forum. (Dkt. # 38 at 7-9.) The case on which Plaintiff relies, *Ting v. AT&T*, 319 F.3d 1126, 1151 (9th Cir. 2003), applies California law and is therefore not controlling. The proper Arizona authority is *Harrington v. Pulte Home Corp.*, 211 Ariz. 241, 252-53, 119 P.3d 1044, 1055-56 (Ct. App. 2005). In *Harrington*, the Arizona Court of Appeals rejected the argument that an arbitration clause was substantively unconscionable because the party seeking to avoid arbitration had failed to present "individualized evidence to establish that the costs of arbitration [were] prohibitive." *Id.* at 252, 119 P.3d at 1055. The court so held even though several of the parties seeking to avoid arbitration had submitted affidavits providing that they could not afford the costs of arbitration, reasoning that "the allegation that the arbitration clause is substantively unconscionable on this record is speculative at best." *Id.* at 253, 119 P.3d at 1056.

- 8 -

The *Harrington* court relied on three facts in finding that the arbitration clause was not substantively unconscionable. First, the costs of arbitrating the claim ($11,750, plus arbitrator compensation and room rental) were small relative to the actual damage amount claimed (between $500,000 and $1,000,000), and the costs were likewise not disproportionate to the litigation expenses, including attorneys' fees, that might otherwise be incurred. *Id.* Second, the affidavits purporting to show that arbitration would be prohibitively costly contained only "conclusory statements," and offered "no specific facts," "no showing of assets," and no showing of "why arbitration costs would be a hardship, let alone a *prohibitive* hardship." *Id.* Third, the applicable arbitration rules provided for the deferral or reduction of fees in appropriate cases. *Id.* On these bases, the court determined that arbitration costs were not prohibitive so as to render the agreement unenforceable.

The same factors apply with equal force in this case. First, Plaintiff's claim is for over $1,000,000, with arbitration fees that could run between $12,000 and $15,000 (Dkt. # 38 Pt. 3 at 2), amounts that are virtually identical to the *Harrington* case. Thus, the costs of arbitration are not, of themselves, sufficiently disproportionate to suggest substantive unconscionability. Second, like *Harrington*, Plaintiff's affidavit offers only conclusory statements regarding his inability to pay. (*See id.*) Finally, the rules of the organizations listed in the arbitration agreement provide for deferral or reduction of fees for indigent parties, just as they did in *Harrington*. *See* American Arbitration Association, Commercial Arbitration Rules and Mediation Procedures Rule 49 (2007) ("AAA Rules") ("The AAA may, in the event of extreme hardship on the part of any party, defer or reduce the administrative fees."); National Arbitration Forum, Code of Procedure Rule 45 (2008) ("NAF Rules") ("An indigent Consumer Party may Request a waiver of Common Claim filing fees, Request Fees, Hearing Fees, or security for any arbitration, by filing with the Forum a Written Request for a waiver at the time payment is due."). Therefore, as in *Harrington*, "the allegation that the arbitration clause is substantively unconscionable on this record is speculative at best." 211 Ariz. at 253, 119 P.3d at 1056. Plaintiff has not met his burden of

proving that arbitration will be prohibitively expensive. Thus, the Court will not find substantive unconscionability on this basis.

### b. Provision for Waiver of Arbitration Fees

Plaintiff next argues that the arbitration agreement is unconscionable because it makes no provision for deferral or waiver of fees for indigent parties. (Dkt. # 38 at 9.) Plaintiff again cites authority decided under California law, *Circuit City Stores, Inc. v. Mantor*, 335 F.3d 1101, 1108 (9th Cir. 2003), which is not applicable here. Regardless, the arbitration agreement incorporates the rules of the AAA and the NAF (*see* Dkt. # 11 Ex. A at 9), both of which provide for the reduction or deferral of fees for indigent parties, *see* AAA Rule 49; NAF Rule 45. Thus, the agreement is not substantively unconscionable under this reasoning.

### c. Potential to Pay Arbitration Costs

Plaintiff argues that the potential that he might have to pay for arbitration costs if he does not prevail renders the arbitration agreement substantively unconscionable. (Dkt. # 38 at 9-10.) Plaintiff again cites to a case decided under California law, *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1177-78 (9th Cir. 2003), which does not apply here. The Fifth Circuit, citing *Ingle* as an example of the uniqueness of California's view on the unconscionability of arbitration agreements, has refused to rely on California law in determining whether an arbitration agreement is unconscionable under Texas law. *See Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 301 n.5 (5th Cir. 2004). The *Carter* court reasoned that "California law and Texas law differ significantly, with the former being more hostile to the enforcement of arbitration agreements than the latter." *Id.* Like Texas (and the federal government), Arizona has a strong policy of favoring arbitration agreements. *See Harrington*, 211 Ariz. at 252-53, 119 P.3d at 1055-56 (discussing the "liberal federal policy favoring arbitration" and providing that "Arizona has the same policy favoring arbitration"). Thus, *Ingle* is not intrinsically persuasive authority for determining how the Arizona courts would rule in this regard, and Plaintiff has not even attempted to explain why the Arizona Supreme Court would take a view similar to the *Ingle* court on this matter. Indeed, under Arizona law, Plaintiff could also be held liable for fees and costs if he were

to pursue his claims in court and thereafter failed to prevail on those claims. *See* Ariz. Rev. Stat. §§ 12-341 (governing the award of costs to the successful party in a civil action), 12-341.01 (governing the award of attorneys' fees for actions arising out of a contract). Thus, it does not appear that Plaintiff is in any way disadvantaged by this clause in the arbitration agreement.

Moreover, *Ingle* deals with employment claims, not consumer claims, *see* 328 F.3d at 1177-78, and Plaintiff makes no effort to explain why a rule the *Ingle* court explicitly applied only to employment actions would apply outside that context. *See id.* at 1178 ("By itself, the fact than an *employee* could be held liable for Circuit City's share of the arbitration costs should she fail to vindicate *employment-related claims* renders this provision substantively unconscionable.") (emphases added). For this additional reason, Plaintiff has failed to meet his burden of establishing unconscionability under this argument.

Finally, even if the *Ingle* rule were applicable, the arbitration agreement here is distinguishable from the arbitration clause in *Ingle*. In *Ingle*, the arbitration clause provided that "the Arbitrator may require the [employee] to pay [the employer's] share of the costs of arbitration and incidental costs." *Id.* at 1177-78. "Costs of arbitration" included filing and administrative fees, as well as arbitrator compensation, transcription services, and room rentals. *Id.* at 1178 n.16. "Incidental costs" included miscellaneous expenses like photocopying and witness production. *Id.* Thus, the arbitration clause in *Ingle* permitted the arbitrator to shift virtually the entire cost of litigation onto the plaintiff, including the initial filing fees, essentially on a whim.

In this case, by contrast, the arbitration agreement does not permit the shifting of all fees, including up-front filing fees, and it does not permit the arbitrator to assign fees to Plaintiff with impunity. The agreement provides that, if Plaintiff files for arbitration, he will pay no more than $125 (or the applicable court filing fee, whichever is less) toward arbitration filing fees or case management fees. (Dkt. # 11 Ex. A at 9.) If Byrider were to file for arbitration, on the other hand, it would enjoy no such advantage, but rather would be responsible for the entirety of the filing or case management fees up to $3,500. (*Id.*) The

provision to which Plaintiff objects is only that "[t]he arbitrator shall decide who shall pay any *additional* costs and fees." (*Id.*) Thus, Plaintiff will not, as he argues, be responsible for bearing the entire cost of the arbitration if he loses; he could only be responsible for additional fees not otherwise provided for in the agreement. Moreover, those fees cannot be assigned on a whim, as they apparently could be in *Ingle*, but rather must be assigned "according to the applicable rules." (*Id.*) Both the AAA and the NAF have rules for the imposition of such fees and expenses, *see* AAA Rule 50; NAF Rule 44, and both the AAA and the NAF have procedures for deferring or reducing fees, *see* AAA Rule 49; NAF Rule 45. The arbitration agreement is therefore not "so one-sided as to oppress or unfairly surprise an innocent party," nor does it present an "overall imbalance in the obligations and rights imposed by the bargain." *Maxwell*, 184 Ariz. at 89, 907 P.2d at 58.

Under these circumstances, and given Arizona's "policy favoring arbitration," *Harrington*, 211 Ariz. at 253, 119 P.3d at 1056, this fee provision is not substantively unconscionable.

### d. Self-Help Remedies

Plaintiff, again citing *Ingle*, argues that the arbitration agreement is unconscionable because the parties retained the right to pursue self-help remedies. (Dkt. # 38 at 10-11.) The arbitration agreement provides:

> Notwithstanding this arbitration agreement, the Parties retain the right to exercise self-help remedies and to seek provisional remedies from a court, pending final determination of the Dispute by the arbitrator. No Party waives the right to elect arbitration of a Dispute by exercising self-help remedies, filing suit, or seeking or obtaining provisional remedies from a court.

(Dkt. # 11 Ex. A at 9.) Plaintiff's argument is that self-help remedies (specifically repossession) are practically available only to Byrider, and thus the arbitration agreement is unfairly one-sided. (*See* Dkt. # 38 at 10-11.)

For the same reasons discussed above, the Court is reluctant to rely on *Ingle* in the absence of any argument as to why it applies to Arizona law. Regardless, even if the Court were to rely on *Ingle* and California law, the Eastern District of California has rejected

Plaintiff's argument as applied to the very same language in an arbitration agreement. *See Hartung v. J.D. Byrider, Inc.*, No. 1:08-CV-00960, 2008 WL 4615044, at *6-7 (E.D. Cal. Oct. 17, 2008) (applying California law and finding that the language at issue was not substantively unconscionable because "the arbitration agreement at issue does not require one party but not the other to arbitrate its claims"). This Court agrees with *Hartung* that the retention of mutual self-help remedies is not "so one-sided as to oppress," *Maxwell*, 184 Ariz. at 89, 907 P.2d at 58, and thus it is not unconscionable.[3]

### e. Determination of the Arbitration Clause's Scope

Plaintiff's last unconscionability argument is that the arbitration agreement is substantively unconscionable because it "purports to allow the arbitrator to resolve any dispute concerning the scope of the arbitration clause and to decide whether any particular claim should be arbitrated or not." (Dkt. # 38 at 11-12.) The provision in question states that either party may elect to arbitrate "any Dispute over the interpretation, scope or validity of this Contract, the arbitration agreement or the arbitrability of any issue." (Dkt. # 11 Ex. A at 8.) Plaintiff's argument is entirely academic because neither Byrider nor Plaintiff has moved to submit the issue of the scope of arbitrability to the arbitrator. (*See* Dkt. # 33 at 5.) This is also not an issue before the Court because there is no dispute that Plaintiff's claims fall within the scope of the agreement. Thus, Plaintiff cannot evade arbitration under this argument.

For these reasons, Plaintiff has not established any form of unconscionability.

---

[3]Plaintiff also suggests that the agreement's retention of the right to sue for deficiency judgments renders it unconscionable, but he offers no reasoning or authority different from that discussed regarding self-help remedies. (*See* Dkt. # 38 at 10-11.) To the extent Plaintiff has properly raised such an argument, it is rejected for the same reasons discussed above.

## B. MMWA Claims

Plaintiff next argues that his MMWA claims are not subject to arbitration. (Dkt. # 38 at 13-15.) Plaintiff makes two arguments in this regard: (1) that all MMWA claims are exempt from the scope of the FAA; and (2) that Plaintiff cannot be compelled to arbitrate his MMWA claims because the arbitration clause appears in the Retail Installment Contract and Security Agreement, and not in the warranty itself. The Court accepts neither argument.

### 1. The Arbitrability of MMWA Claims

Plaintiff first argues that MMWA claims are not subject to binding arbitration agreements. (Dkt. # 38 at 13-14.) There is a "liberal federal policy favoring arbitration," and "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Any doubts about the scope of arbitrable issues are to be resolved in favor of arbitration, *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985), and the party seeking to avoid arbitration has the burden of establishing that Congress intended to preclude arbitration, *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 91-92 (2000).

Neither the United States Supreme Court nor the Ninth Circuit has specifically discussed the arbitrability of MMWA claims. The only federal appellate courts to have done so, the Fifth and Eleventh Circuits, have rejected Plaintiff's argument and held that the MMWA does not preclude binding arbitration. *Walton v. Rose Mobile Homes LLC*, 298 F.3d 470, 478 (5th Cir. 2002); *Davis v. S. Energy Homes, Inc.*, 305 F.3d 1268, 1280 (11th Cir. 2002). Many federal district courts and state courts agree. *See, e.g.*, *Dombrowski v. Gen. Motors Corp.*, 318 F. Supp. 2d 850, 850-51 (D. Ariz. 2004); *Pack v. Damon Corp.*, 320 F. Supp. 2d 545, 557-58 (E.D. Mich. 2004), *reversed in part on other grounds by* 434 F.3d 810 (6th Cir. 2006); *S. Energy Homes, Inc. v. Ard*, 772 So.2d 1131, 1135 (Ala. 2000); *Results Oriented, Inc. v. Crawford*, 538 S.E.2d 73, 81 (Ga. Ct. App. 2000); *Borowiec v. Gateway 2000, Inc.*, 808 N.E.2d 957, 970 (Ill. 2004); *Walker v. DaimlerChrysler Corp.*, 856 N.E.2d 90, 93 (Ind. Ct. App. 2006); *Hemphill v. Ford Motor Co.*, 206 P.3d 1, 12 (Kan. Ct. App.

2009); *Howell v. Cappaert Manufactured Housing, Inc.*, 819 So.2d 461, 464 (La. Ct. App. 2002); *Abela v. Gen. Motors Corp.*, 677 N.W.2d 325, 237 (Mich. 2004); *McDaniel v. Gateway Computer Corp.*, No. 04CA12, 2004 WL 2260497, at *3 (Ohio Ct. App. Sept. 24, 2004); *In re Am. Homestar of Lancaster, Inc.*, 50 S.W.3d 480, 492 (Tex. 2001). These cases tend to focus on the test laid out in *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 227 (1987). Under the *McMahon* test, the party seeking to avoid arbitration must demonstrate a Congressional intention, "discernable from the text, history, or purposes of the statute," to exempt particular statutory claims from the scope of the FAA. *Id.*

However, the Federal Trade Commission ("FTC") takes a different view. The FTC notes that the MMWA authorizes mandatory use of "informal dispute settlement procedures," 15 U.S.C. § 2310(a)(3), and in promulgating regulations for such procedures, the FTC has taken the position that informal dispute settlement procedures "shall not be legally binding on any person," 16 C.F.R. § 703.5(j). From that, the FTC concludes that "reference within the written warranty to any binding, non-judicial remedy is prohibited by the Rule and the Act." 40 Fed. Reg. 60168, 60211 (Dec. 31, 1975).[4]

Based principally on the FTC's position, some courts have disagreed with the Fifth and Eleventh Circuits, holding that MMWA claims cannot be made subject to binding arbitration. *See, e.g.*, *Breniser v. W. Recreational Vehicles, Inc.*, No. CV-07-1418-HU, 2008 WL 5234528, at *5-6 (D. Or. Dec. 12, 2008); *Rickard v. Teynor's Homes, Inc.*, 279 F. Supp. 2d 910, 921 (N.D. Ohio 2003); *Browne v. Kline Tysons Imp., Inc.*, 190 F. Supp. 2d 827, 830-31 (E.D. Va. 2002); *Pitchford v. Oakwood Mobile Homes, Inc.*, 124 F. Supp. 2d 958, 962-65 (W.D. Va. 2000); *Koons Ford of Baltimore v. Lobach*, 919 A.2d 722, 737 (Md. 2007); *Parkerson v. Smith*, 817 So.2d 529, 532-35 (Miss. 2002); *Philyaw v. Platinum Enters., Inc.*, No. CL00-236, 2001 WL 112107, at *2 (Va. Cir. Ct. Jan. 9, 2001). These cases have tended

---

[4]The FTC is the agency tasked with promulgating regulations to implement the MMWA. *See* 15 U.S.C. § 2312(c). The FTC is specifically authorized to prescribe rules setting forth minimum requirements for any "informal dispute settlement procedure" incorporated into the terms of a written warranty. 15 U.S.C. § 2310(a)(2).

to focus on the test for agency deference laid out in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843 (1984). Under the *Chevron* test, a court must defer to a federal agency's interpretation of a statute it administers if "Congress has not directly addressed the precise question at issue" and "the agency's answer is based on a permissible construction of the statute." *Id.*

Thus, to rule on Plaintiff's argument the Court must apply both the *McMahon* and *Chevron* tests to determine: (a) whether there is any indication that Congress intended MMWA claims to be exempt from the FAA, and (b) whether the FTC's conclusion that it did is based on a permissible construction of the statute. The Court concludes that there is no indication of Congressional intent that MMWA claims not be made subject to binding arbitration agreements, and the Court likewise concludes that the FTC's contrary reading of the statute is impermissible. The essence of the Court's reasoning is the same under both tests: a statute that delegates to an administrative agency the authority to prescribe rules governing "informal dispute settlement procedures" does not imbue that agency with authority to prohibit the use of arbitration as a forum in which the merits of a dispute may be finally, formally, and legally resolved.

### a. The *McMahon* Test

Nothing in the text, history, or purposes of the MMWA suggests Congressional intent to preclude binding arbitration of its claims.

### 1) Text

The MMWA provides rules governing the content of warranties, the designation of written warranties, and the minimum standards for warranties, and it provides for remedies in consumer disputes over warranties. *See* 15 U.S.C. § 2301 *et seq*. However, the text of the MMWA makes no suggestion that an MMWA claim may not be resolved through binding arbitration. *See id.* Thus, the text of the statute does not indicate that Congress intended to exempt MMWA claims from the FAA.

### 2) History

The legislative history of the MMWA likewise provides no indication that Congress intended to preclude resolution of its claims through binding arbitration. In fact, it suggests precisely the opposite. The Senate Conference Report, S. Rep. No. 93-1408 (1974) (Conf. Rep.), *reprinted in* 1974 U.S.C.C.A.N. 7755, states that parties may look to both courts *and arbiters* to resolve "actions" and to be the "ultimate" means of resolving an MMWA claim. The Senate Conference Report explains 15 U.S.C. § 2304(a)(4) – which provides that the FTC can promulgate rules regarding what constitutes a "reasonable number of attempts" for a warrantor to remedy a product defect or malfunction before providing a refund or replacement – by stating that "if the [FTC] does not determine by rule what constitutes a reasonable number of attempts in a given situation, then the parties or, *ultimately*, a third party (*arbiter* or judge) would decide." S. Rep. No. 93-1408, *reprinted in* 1974 U.S.C.C.A.N. at 7757 (emphases added). The Senate Conference Report's explanation of 15 U.S.C. § 2304(b)(1)[5] likewise demonstrates that binding arbitration is a permissible means of resolving MMWA disputes. The Senate Conference Report explains that if no FTC rule governs the reasonableness of a warrantor-imposed duty:

> the consumer could challenge the reasonableness of such requirement *by bringing an action for breach of warranty* and arguing that the warrantor had breached his full warranty obligation. The burden would then be upon the warrantor to establish *before an arbiter or in a court* that the requirement . . . was reasonable . . . .

S. Rep. No. 93-1408, *reprinted in* 1974 U.S.C.C.A.N. at 7757 (emphases added). Thus, the history of the MMWA suggests that arbitration is an acceptable alternative forum in which to finally and formally resolve MMWA claims.

---

[5]That section provides that, in fulfilling its obligations under the MMWA, a warrantor "shall not impose any duty other than notification" on a consumer as a condition of obtaining a remedy for a product defect, "unless the warrantor has demonstrated . . . that such a duty is reasonable." 15 U.S.C. § 2304(b)(1). It further provides that a warrantor can demonstrate that such a duty is reasonable "in a rulemaking proceeding . . . in an administrative or judicial enforcement proceeding (including private enforcement), or in an informal dispute settlement proceeding." *Id.*

### 3)    **Purposes**

"We must assume that if Congress intended the substantive protection afforded by a given statute to include protection against waiver of the right to a judicial forum, that intention will be deducible from text or legislative history." *Mitsubishi Motors*, 473 U.S. at 628. Regardless, the purposes of the MMWA provide no indication that the FAA should not apply to its claims.

The MMWA was enacted in 1975 "[i]n order to improve the adequacy of information available to consumers, prevent deception, and improve competition in the marketing of consumer products." 15 U.S.C. § 2302(a). The Senate Conference Report provides that the purposes of the MMWA are "to provide disclosure standards for written consumer product warranties against defect or malfunction [and] to define Federal content standards for such warranties." S. Rep. No. 93-1408, *reprinted in* 1974 U.S.C.C.A.N. at 7755. The House Report provides that "[t]he purpose of this legislation is . . . to make warranties on consumer products more readily understood and enforceable [and] to provide the [FTC] with means of better protecting consumers." H.R. Rep. No. 93-1107 (1974), *reprinted in* 1974 U.S.C.C.A.N. 7702, 7702.[6]

None of these purposes suggests the unsuitability of arbitration for MMWA claims. If anything, the concern for consumers evident in these purposes actually favors the general cost-effectiveness of arbitration, as fewer of the consumer's resources are devoted to potential or actual litigation. *See Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 280 (1995) ("[A]rbitration's advantages often would seem helpful to individuals, say, complaining about a product, who need a less expensive alternative to arbitration."). Indeed, arbitration is a Congressionally-favored forum precisely because it is easier, cheaper, and more comprehensible than in-court litigation. *Cf.* H.R. Rep. No. 97-542, at 13 (1982) ("The advantages of arbitration are many: it is usually cheaper and faster than litigation; it can have

---

[6]The House Report also provides that the MMWA's purposes include authorizing appropriations for FTC operations from 1975-77, *see* H.R. Rep. No. 93-1107, *reprinted in* 1974 U.S.C.C.A.N. at 7702, but this purpose does not bear on the question at issue.

simpler procedural and evidentiary rules; it normally minimizes hostility and is less disruptive of ongoing and future business dealings among the parties; [and] it is often more flexible in regard to scheduling . . . ."), *quoted in Allied-Bruce Terminix*, 513 U.S. at 280.

The notion that the pro-consumer policy of the MMWA is inconsistent with the liberal federal policy favoring arbitration is unconvincing. Those cases that make such a conclusion do so based on scant authority, preferring to baldly suggest that binding arbitration agreements "deprive the plaintiff . . . of meaningful opportunity for redress." *See, e.g.*, *Rickard*, 279 F. Supp. 2d at 921. But that is not the case. An arbitration agreement is not inherently pro-business or anti-consumer. *Allied-Bruce Terminix*, 513 U.S. at 280 ("Congress, when enacting the [FAA], had the needs of consumers . . . in mind."); *see also Mitsubishi Motors*, 473 U.S. at 634 ("We decline to indulge the presumption that the parties and arbitral body conducting a proceeding will be unable or unwilling to retain competent, conscientious and impartial arbitrators."). Rather, an agreement to arbitrate before a specified tribunal is little more than "a specialized kind of forum-selection clause." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974). As the Supreme Court has emphasized: "we are well past the time when judicial suspicion of the desirability of arbitration and of the competence of arbitral tribunals should inhibit enforcement of the [FAA] in controversies based on statutes." *McMahon*, 482 U.S. at 226 (internal quotations omitted). Therefore, there is nothing inherent in the signing of an arbitration agreement that interferes with the pro-consumer policy of the MMWA.

In sum, the text, history, and purposes of the MMWA provide no indication that Congress intended for the FAA to be inapplicable to its claims. Thus, Plaintiff has failed to carry his burden under the *McMahon* test.

### b.    The *Chevron* Test

The *Chevron* test likewise provides Plaintiff no refuge.  The absence of any explicit mention of arbitration in the MMWA yields the conclusion that "Congress has not directly addressed the precise question at issue."  *Chevron*, 467 U.S. at 843.  Thus, the only remaining question under the *Chevron* test is whether the FTC's conclusion that the MMWA prohibits binding arbitration of its claims "is based on a permissible construction of the statute."  *Id.*  For a number of reasons, no deference is due the FTC's conclusion that it has the power to prohibit the formal resolution of claims through binding arbitration by virtue of its authority to regulate "informal settlement" procedures.

The FTC's position that "reference within the written warranty to any binding, non-judicial remedy is prohibited by the Rule and the Act," 40 Fed. Reg. at 60211, is based entirely on the view that all binding non-judicial remedies constitute "informal dispute settlement procedures" and thus fall under the regulatory power delegated to the FTC by the MMWA to define acceptable "informal dispute settlement procedures."  That inference, however, is unreasonable and finds no basis in any permissible construction of the MMWA.

The term "informal dispute settlement procedure" is not defined in the MMWA, and thus the term must be given its plain, ordinary meaning.  *Perrin v. United States*, 444 U.S. 37, 42 (1979) ("A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning.").  The key elements of this term are the words "informal" and "settlement," and the key question is whether the use of those terms in the MMWA could permissibly be read to cover binding arbitration.  "Informal" and "informality" were defined by dictionaries contemporary to the MMWA as "deficient in legal form" and as a "want of legal form."  Black's Law Dictionary 918 (4th ed. rev. 1968).  "Settlement" was defined as "an adjustment between persons concerning their dealings or difficulties" and "an agreement by which parties having disputed matters between them reach or ascertain what is coming from one to the other."  *Id.* at 1538-39.  "Arbitration," on the other hand, was merely "the substitution of [a private decision-maker's] award or decision for judgment of a court."  *Id.* at 134.

Under the plain meaning of these terms, binding arbitration is not an "informal settlement." Binding arbitration formally and finally resolves a legal claim; it does not involve the voluntary surrender of the right to pursue a claim. *See Mitsubishi Motors*, 473 U.S. at 628 ("By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum."). Unlike a procedure in which a third party resolves a case on the merits, an "informal settlement" is a voluntary agreement by the parties themselves, not imposed by a third party, to forego any legal claims they may have in exchange for compensation. Thus, the term "informal dispute settlement procedure" can only be plausibly interpreted as a mechanism distinct from binding arbitration.

Indeed, the Senate Conference Report's discussion of "informal dispute settlement procedures" makes clear that these procedures were envisioned to operate as a prerequisite to the filing of an action, akin to the exhaustion of an administrative remedy, and were not meant to govern arbitration as a substitute means of resolving a formal claim. In making the point that informal dispute settlement procedures must meet certain guidelines, the Senate Conference Report provides that deficient informal dispute settlement procedures "need not be *exhausted*" and that "the initial burden of showing that the procedure complies with this legislation and [any] FTC rules would be on any [party] seeking to require *exhaustion* of such procedure." S. Rep. No. 93-1408, *reprinted in* 1974 U.S.C.C.A.N. at 7759 (emphases added). This conceptualization of informal dispute settlement procedures as being "exhaustion" requirements to which consumers may be required to resort "first," "before initiating a suit," *id.* at 7758, is incompatible with the view that informal dispute settlement procedures are meant to cover binding arbitration that would formally and finally resolve a claim.

The language of the MMWA itself suggests this conclusion. The section that describes the required characteristics of an informal dispute settlement procedure provides that if a given procedure meets those requirements, then "the consumer may not commence a civil action . . . unless he *initially* resorts to such procedure." 15 U.S.C. § 2310(a)(3)

(emphasis added). Thus, instead of referring to such procedures as a means of finally resolving a dispute, an informal dispute settlement procedure is meant to operate *before* the filing of a claim as a prerequisite that a warrantor may require a consumer to exhaust. The MMWA's use of the term "informal dispute settlement procedure" therefore does not govern how formal claims, once brought, may be adjudicated.

Even the FTC's regulations governing informal dispute settlement procedures seem to recognize that such procedures are intended to operate merely as a pre-claim mechanism for dispute resolution, and are not intended to regulate the forum in which an action can be pursued once it is brought as a formal claim. The regulations provide that warrantors must disclose on the face of the warranty "any requirement that the consumer resort to the [informal dispute settlement procedure] *before exercising rights or seeking remedies* created by [the MMWA]." 16 C.F.R. § 703.2(b)(3) (emphasis added). If informal dispute settlement procedures operate *before* rights are exercised and remedies sought, then informal dispute settlement procedures plainly cannot refer to proceedings *in which* such rights are exercised and remedies sought.

The various reasons offered by the FTC for concluding otherwise are not persuasive. In 16 C.F.R. § 700.8, the FTC reasons that warrantors may not designate third parties to finally resolve disputes because "section 110(d) of the Act gives state and federal courts jurisdiction over suits for breach of warranty and service contract." However, the mere grant of jurisdiction to courts does not suggest an intent to prohibit resolution of disputes in an arbitral forum. The Supreme Court has rejected a similar notion in the context of language that is significantly more indicative of an intent to confine redress to the court system. *See McMahon*, 482 U.S. at 227 (finding that claims under the Securities Exchange Act may be made subject to arbitration even though the statute provides that "the district courts of the United States . . . shall have *exclusive* jurisdiction of violations of this title") (emphasis added). Under Supreme Court precedent, then, the FTC's reading of the MMWA's jurisdictional grant is untenably overbroad.

- 22 -

In the original promulgation of rules on the Federal Register, the FTC offered two other reasons for prohibiting binding arbitration of MMWA claims. The first reason was that "Congressional intent was that decisions of Section 110 Mechanisms[7] not be legally binding." 40 Fed. Reg. at 60210. The Court does not quarrel with the FTC's conclusion that informal dispute settlement procedures should not be binding – but that conclusion simply demonstrates that binding arbitration is not an "informal dispute settlement procedure," and thus that the FTC has no authority to preclude its application to MMWA claims, especially in light of the FAA.

Indeed, the FTC has explicitly recognized the possibility that parties *could* agree to binding arbitration after informal dispute settlement procedures had concluded. 40 Fed. Reg. at 60211 ("The warrantor, the Mechanism, or any other group can offer a binding arbitration option to consumers who are dissatisfied with Mechanism decisions or warrantor intentions."). There is simply no reason why the mere timing of when the parties entered into a binding arbitration agreement would affect whether Congress intended for the parties to be able to resolve MMWA disputes in an arbitral rather than a judicial forum. The FTC's recognition that such an outcome is permissible strongly undercuts its reasoning that warranties may not include binding arbitration agreements.

The FTC's second proffered reason for concluding that binding arbitration agreements were precluded was that "the Commission is not prepared, at this point in time, to develop guidelines for a system in which consumers would commit themselves, at the time of product purchase, to resolve any difficulties in a binding, but non-judicial, proceeding." 40 Fed. Reg. at 60210. As an initial matter, the FTC does not explain how the MMWA gives the FTC the authority to develop guidelines for binding arbitration if binding arbitration cannot be an "informal dispute settlement procedure." Nor does an agency's reticence to develop guidelines in any way inform the question of what Congress intended the MMWA to permit

---

[7]"Mechanism" is simply "an informal dispute settlement procedure which is incorporated into the terms of a written warranty to which any provision of Title I of the Act applies, as provided in Section 110 of the Act." 16 C.F.R. § 703.1(e).

or exclude. To the extent that this reason demonstrates the FTC's skepticism that arbitration sufficiently protects the interests of consumers in the absence of an FTC-implemented system, the existence of the FAA demonstrates that Congress does not share that reticence. The Supreme Court has been quite clear that such innate suspicion of arbitration is not sufficient to render arbitration agreements unenforceable. *See McMahon*, 482 U.S. at 226 ("[W]e are well past the time when judicial suspicion of the desirability of arbitration and of the competence of arbitral tribunals should inhibit enforcement of the [FAA] in controversies based on statutes.") (internal quotations omitted). However this second reason offered by the FTC is construed, it does not provide a legitimate basis for reading a ban on all arbitration agreements into the MMWA.

In its 1999 regulatory review statement, the FTC offered yet another rationale. The FTC first reaffirmed its view that binding arbitration agreements are impermissible. 64 Fed. Reg. 19700, 19708-09 (Apr. 22, 1999) ("The Commission believes that this interpretation continues to be correct. . . . Rule 703 will continue to prohibit warrantors from including binding arbitration clauses in their contracts with consumers that would require consumers to submit warranty disputes to binding arbitration."). Stating that it "based this decision on its analysis of the plain language of the Warranty Act," the FTC then reasoned that the MMWA "clearly implies that a mechanism's decision cannot be legally binding, because if it were, it would bar later court action." *Id.* at 19708. This reasoning again continues the FTC's unwarranted conflation of informal dispute settlement procedures with formal arbitration proceedings. The FTC's conclusion that informal dispute settlement procedures cannot be binding may in fact be reasonable – but the MMWA does not extend any authority to the FTC to regulate processes, like binding arbitration, that are not informal dispute settlement procedures.

The best advocacy for the FTC's position is actually the dissent in *Walton*, which looks at three statements in the MMWA's legislative history that ostensibly support the FTC's interpretation. *See* 298 F.3d at 490-92 (King, C.J., dissenting). However, none of the dissent's points are ultimately persuasive. First, the dissent reasoned that the Senate

Commerce Committee Report's reference to "legal remedies in a court of competent jurisdiction" as one of the "other avenues of redress" beyond informal dispute settlement procedures indicated that "litigation, not arbitration, is the 'other avenue[] of redress' available to the consumer." *Id.* at 491 (quoting S. Rep. No. 93-151, at 2-3 (1973)). The dissent's reading of this section, however, is plainly incorrect *even according to the FTC*, which acknowledges that parties *can* agree to binding arbitration after informal dispute settlement procedures have concluded. *See* 40 Fed. Reg. at 60211 ("The warrantor, the Mechanism, or any other group can offer a binding arbitration option to consumers who are dissatisfied with Mechanism decisions or warrantor intentions."). Second, the dissent pointed to the report's use of the term "litigation" in reference to "formal adversary proceedings" as evidence that "litigation (not arbitration) is the 'formal adversary proceeding' contemplated by the Act." *Walton*, 298 F.3d at 491 (King, C.J., dissenting) (quoting S. Rep. No. 93-151, at 22-23). But to "litigate" was defined simply as "to dispute or contend in form of law; to carry on a suit," Black's Law Dictionary 1082 (4th ed. rev. 1968), and the term carried no innate suggestion that it excluded arbitration. Finally, the *Walton* dissent looked to the Senate Conference Report's reference to "internal or other private dispute settlement procedures" as an indication that the term "informal dispute settlement procedure" was meant "to be read broadly." *Walton*, 298 F.3d at 491 (King, C.J., dissenting) (quoting S. Rep. No. 93-1408, *reprinted in* 1974 U.S.C.C.A.N. at 7758). While Congress may have intended the term "informal dispute settlement procedure" to be read broadly, the term nevertheless cannot extend beyond those procedures that are both "informal" and that constitute a "settlement." As explained above, binding arbitration is not "informal," and it is not a "settlement." Rather, it is a method by which a legal claim is formally and finally resolved by a third party. Thus, none of the statements identified by the *Walton* dissent provides a legitimate basis on which the FTC could rely in prohibiting binding arbitration of MMWA claims.

In sum, the text, history, and purposes of the MMWA provide no indication that Congress intended to exempt its claims from the requirements of the FAA. The FTC, in

reasoning that it has the power to ban binding arbitration because it may set standards for "informal dispute settlement procedures," has impermissibly construed the statute and assumed authority that it does not have. Plaintiff therefore cannot establish under either *McMahon* or *Chevron* that his MMWA claims against Byrider are not arbitrable.

**2. Effectiveness of an Arbitration Agreement Outside the Warranty**

Plaintiff further argues that he cannot be compelled to arbitrate his MMWA warranty claims unless the arbitration clause appears in the warranty itself, rather than in the Retail Installment Contract and Security Agreement. (Dkt. # 38 at 14-15.) For that proposition, Plaintiff cites only *Cunningham v. Fleetwood Homes of Georgia, Inc.*, 253 F.3d 611, 621 (11th Cir. 2001). Plaintiff's argument fails for two reasons.

First, *Cunningham* predicated its holding on the conclusion that binding arbitration is an informal dispute settlement mechanism and therefore must be disclosed in a warranty under the MMWA's "single document" disclosure rule. *See id.* at 624 ("Because we conclude that [the manufacturer's] failure to disclose in the warranty a term or clause requiring [the purchaser] to utilize an informal dispute resolution mechanism runs afoul of the disclosure requirements of the [MMWA], we affirm the district court's order declining to compel arbitration of the written or express warranty claims."). The Eleventh Circuit, however, has since reversed course and directly rejected the notion that binding arbitration is an informal dispute resolution mechanism under the MMWA. *Davis*, 305 F.3d at 1276. Thus, the reasoning on which the *Cunningham* court's holding is based has been retracted. *See Patriot Mfg., Inc. v. Dixon*, 399 F. Supp. 2d 1298, 1304 (S.D. Ala. 2005) (explaining how *Davis* undermines *Cunningham* and stating that "while the single document rule enjoys continued vitality, arbitration agreements lie beyond the scope of the disclosures required pursuant to that rule").

Second, *Cunningham* explicitly limited its holding to cases in which a third-party beneficiary (in that case, the manufacturer) seeks to compel binding arbitration using an agreement executed between two other parties (in that case, the purchaser and the dealer). 253 F.3d at 624 ("The only issue we are presented with here, and thus decide, is whether [the

manufacturer] can utilize its third-party beneficiary status under the [dealer-purchaser] arbitration agreement to compel binding arbitration of the [purchaser's] breach of written or express warranty claims against [the manufacturer] when there is no reference to binding arbitration in the warranty."). *Cunningham* was clear that "the unique nature of the contractual arrangement at issue" rendered it unnecessary to decide the question Plaintiff now presents as its holding. *See id.* Because the arbitration agreement in this case is not being asserted by a third-party beneficiary, but rather by the party who actually entered the agreement with Plaintiff, *Cunningham* is not on point. Because Plaintiff makes no broader argument that the principle announced in *Cunningham* should be applied to the circumstances presented here, the Court would not have occasion to reach that issue in any event.

Plaintiff has offered no reason why his MMWA claims are not subject to the arbitration agreement he signed. He therefore must arbitrate those claims.

### C.    TILA Claims

Plaintiff further argues that his TILA claims are not subject to binding arbitration. (Dkt. # 38 at 15-17.) Plaintiff advances two theories under this argument. First, relying on *Green Tree*, 531 U.S. 79, Plaintiff asserts that the arbitration agreement imposes "exorbitant fees and costs" inconsistent with TILA's grant of federal statutory rights. In *Green Tree*, the Supreme Court stated that "[i]t may well be that the existence of large arbitration costs could preclude a litigant . . . from effectively vindicating her federal statutory rights in the arbitral forum." *Id.* at 90. However, the Supreme Court held that the party seeking to avoid arbitration had not established that she was likely to bear such prohibitive costs in arbitration because all she had done was to assert that arbitration costs were high and that she did not have the resources to arbitrate. *Id.* at 91 n.6. The Court reasoned that on such a record, "[t]he 'risk' that [she] will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement." *Id.* at 91.

In this case, likewise, Plaintiff has alleged an estimate of the costs of arbitration and has offered the general statement that he has "limited financial resources" and "would not

be able to proceed with this case if forced to pay the costs of arbitration." (Dkt. # 38 Pt. 3 at 2.) Plaintiff has offered nothing specific to demonstrate that the arbitration costs in this case are either inordinately or prohibitively high, especially in relation to the amount of damages claimed (over one million dollars). The Court will therefore enforce the arbitration agreement. *See, e.g.*, *In re Cotton Yarn Antitrust Litig.*, 505 F.3d 274, 285 (4th Cir. 2007) ("This kind of uninformed speculation about cost falls far short of satisfying the plaintiffs' burden of proving that the costs of proceeding individually against the defendants would be prohibitive and thus would prevent them from effectively vindicating their statutory rights.").

Second, Plaintiff argues that the arbitration agreement prevents vindication of his TILA rights because the agreement permits any prevailing party to recover attorneys' fees, whereas TILA provides that the prevailing consumer may recover attorneys' fees. *See* 15 U.S.C. § 1640(a)(3) (providing that "in the case of any successful action to enforce the [Act's] liability," "any creditor who fails to comply with any requirement imposed under [the Act] . . . with respect to any person is liable to such person" for "the costs of the action, together with a reasonable attorney's fee as determined by the court").[8] Plaintiff does not cite any argument or authority supporting the notion that this section is meant to foreclose a creditor from all *other* avenues of recovering attorneys' fees on a TILA claim. The only authority Plaintiff cites stands for the general proposition that an arbitration clause is invalid if it interferes with the vindication of a statutory cause of action. (*See* Dkt. # 38 at 16.) In

_____

[8]Plaintiff also argues that "[j]ust as the arbitration clause limits Plaintiff's remedies respecting fees, it also would eliminate Plaintiff's non-waivable statutory right to statutory damages, and arguably limit the statute of limitations to a term less than that afforded under TILA." (Dkt. # 38 at 16.) Plaintiff supports this statement with no argument or analysis (or even, in the latter clause, any definitive position on the matter), and thus the Court will not consider this statement. *See Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929-30 (9th Cir. 2003) (pointing out that "[o]ur circuit has repeatedly admonished that we cannot manufacture arguments [for a party]," that "we review only issues which are argued specifically and distinctly," and that "[w]e require contentions to be accompanied by reasons").

the absence of proper argument and authority, Plaintiff cannot prevail on this argument. *See Indep. Towers*, 350 F.3d at 929-30.

Alternatively, the Court may sever any aspect of the arbitration agreement that would impede vindication of Plaintiff's TILA rights. *Anders v. Hometown Mortgage Servs., Inc.*, 346 F.3d 1024, 1032 (11th Cir. 2003). To the extent the arbitration agreement improperly provides for the recovery of attorneys' fees related to the TILA claim, these provisions would be severed and the remainder of the agreement would be enforced.

### D.    Claims Against General Motors

Plaintiff also argues that his claims against General Motors are not subject to the arbitration agreement and that those claims cannot be severed from his claims against Byrider. (Dkt. # 38 at 17-18.) Plaintiff offers no authority, however, for the proposition that the Court may decline to refer Plaintiff's dispute with Byrider to arbitration on this basis. To the contrary, "the Arbitration Act requires district courts to compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums." *Dean Witter*, 470 U.S. at 217. The Court therefore need not decide whether the arbitration agreement requires Plaintiff to arbitrate his claims against General Motors. Even assuming that those claims are not subject to arbitration, the Court would still be required to compel arbitration of the claims against Byrider.

### E.    Refusal to Arbitrate

Finally, Plaintiff argues that he has not actually refused to arbitrate this dispute, and therefore the right to have the Court compel arbitration has not yet accrued. (Dkt. # 38 at 18.) However, the right to compel arbitration accrues once one of the parties takes "an unequivocal position that it will not arbitrate," because "unless the respondent has resisted arbitration, the petitioner has not been 'aggrieved' by anything." *PaineWebber Inc. v. Faragalli*, 61 F.3d 1063, 1067 (3d Cir. 1995) (quoting 9 U.S.C. § 4). Here, Plaintiff has opposed Byrider's motion to enforce arbitration on numerous grounds. Plaintiff has thereby

resisted arbitration and unambiguously manifested an intention not to arbitrate the subject matter of this dispute. The right to compel arbitration has therefore accrued. *See id.*

Alternatively, the very commencing of litigation can itself be interpreted as a refusal to arbitrate. *See Downing v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 725 F.2d 192, 195 (2d Cir. 1984) ("Unless Merrill Lynch *commences litigation* or is ordered to arbitrate this dispute by the Exchange and fails to do so, it is not in default of any arbitration agreement it may have with Downing.") (emphasis added). Here, Plaintiff has commenced litigation, and thus he can be fairly said to have refused to arbitrate. *See id.* For these reasons, the Court has no basis on which to deny Byrider's motion to compel arbitration.

### F. Jury Trial

Plaintiff also demands a jury trial on the issue of arbitrability pursuant to 9 U.S.C. § 4. (Dkt. # 38 at 19.) However, "[a] party to an arbitration agreement cannot obtain a jury trial merely by demanding one." *Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 961 F.2d 1148, 1154 (5th Cir. 1992). To be entitled to a jury trial, the party resisting arbitration must "show the existence of a genuine issue of fact to be tried before a jury." *Id.* at 1155; *see also Doctor's Assocs. Inc. v. Distajo*, 107 F.3d 126, 129-30 (2d Cir. 1997) (affirming the district court's denial of a request for a jury trial under 9 U.S.C. § 4 on various defenses because the party opposing arbitration had failed to show "that material facts are in dispute"); *Saturday Evening Post Co. v. Rumbleseat Press, Inc.*, 816 F.2d 1191, 1196 (7th Cir. 1987) ("It is not true that by merely demanding a jury trial a party to an arbitration agreement can get one. He can get one only if there is a triable issue concerning the existence or scope of the agreement.").

Here, the facts are not in dispute, and Plaintiff merely argues that the arbitration agreement should not be enforced as a matter of law. Thus, there is no issue for a jury to decide. *See Dillard*, 961 F.2d at 1154 (rejecting a plaintiff's argument that he was entitled to a jury trial under the FAA on the validity of an arbitration clause because the plaintiff's arguments that the clause was unconscionable did not put sufficient facts in issue to merit a jury determination). The jury trial demand is therefore denied.

## III.    Remedy

Because there is nothing to prevent enforcement of the arbitration agreement, the Court must determine what action to take regarding Plaintiff's claims against Byrider. Defendant requests that the claims be dismissed, and in the alternative it requests that the claims be stayed pending arbitration. The Ninth Circuit appears to favor the latter course of action. *See Bushley v. Credit Suisse First Boston*, 360 F.3d 1149, 1153 n.1 (9th Cir. 2004) (explaining that the dismissal of a claim so that arbitration can proceed is an appealable order, while entering a stay is not, and noting that "[u]nnecessary delay of the arbitral process through appellate review is disfavored"). The Court will therefore grant Byrider's alternative request for a stay of Plaintiff's claims pursuant to 9 U.S.C. § 3.

## CONCLUSION

There is an enforceable arbitration agreement between Plaintiff and Byrider, and the claims brought by Plaintiff against Byrider fall within the scope of that agreement. In these circumstances, a stay of those claims is appropriate while arbitration proceeds.

**IT IS THEREFORE ORDERED** that Byrider's Motion to Dismiss and to Enforce Arbitration Agreement and Compel Arbitration (Dkt. # 33) is **GRANTED**. Plaintiff is ordered to submit to arbitration consistent with the terms of the arbitration agreement, the Federal Arbitration Act, and this Order. Plaintiff's claims against Byrider are **STAYED** pending resolution of that arbitration.

**IT IS FURTHER ORDERED** that Plaintiff and Byrider shall file a joint status report informing the Court of the progress of arbitration by **February 14, 2010**, and every six months thereafter.

DATED this 7th day of August, 2009.

G. Murray Snow
United States District Judge